**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**SUSAN E. PETRIE,**

                                        **Plaintiff,**

        **v.**                                                      **5:10-CV-1591**
                                                                    **(FJS/DEP)**

**BIRDS EYE FOODS, INC.; EARNIE PIETRYKOWSKI,**
**in the respective position as Human Resources**
**Manager; RAY HOUSER, in the respective position**
**as Plant Manager; and LOUISE JARVIE, in the**
**respective position as Senior Vice President,**

                                        **Defendants.**

_____

**APPEARANCES**                              **OF COUNSEL**

**O'HARA, O'CONNELL & CIOTOLI**              **TIMOTHY A. COLLINS, ESQ.**
7207 East Genesee Street
Fayetteville, New York 13066
Attorneys for Plaintiff

**BOND, SCHOENECK & KING, PLLC**             **DAVID M. FERRARA, ESQ.**
One Lincoln Center                           **KSENIYA PREMO, ESQ.**
Syracuse, New York 13202-1355                **SUSAN O. GALBATO, ESQ.**
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Currently before the Court is Defendants' motion for summary judgment.  _See_ Dkt. Nos.

21-25.

## II. BACKGROUND

**A.    Plaintiff's employment with Defendant Birds Eye Foods, Inc.**

On July 5, 1995, Defendant Birds Eye Foods, Inc. ("Defendant Birds Eye") hired Plaintiff, then forty years old, to work at its plant in Fulton, New York ("Fulton Plant").  *See* Dkt. No. 21-1 at ¶ 12; Dkt. No. 27 at ¶ 12.[1]  Plaintiff worked as the Production Administrative Assistant, which was a salaried, non-exempt position, during her tenure at Defendant Birds Eye. *See* Dkt. No. 21-1 at ¶ 13; Dkt. No. 27 at ¶ 13.  Plaintiff's duties included the day-to-day scheduling of the Fulton Plant's production employees and insuring that job assignments complied with the applicable collective bargaining agreement for the production line employees. *See* Dkt. No. 21-1 at ¶ 15; Dkt. No. 27 at ¶ 15; Dkt. No. 29 at ¶ 2.  As part of her job, Plaintiff checked the call-in messaging system, which was an electronic voicemail box where employees reported their absences from work during the week and weekends.  *See* Dkt. No. 21-1 at ¶ 16; Dkt. No. 22 at 51-52; Dkt. No. 27 at ¶ 16; Dkt. No. 29 at ¶ 4.  Plaintiff thereafter solicited replacement employees to ensure adequate staffing on the production lines.  *See* Dkt. No. 27 at ¶ 15.  Depending on the number of call-ins, it allegedly took Plaintiff approximately five to thirty minutes to check the call-in messaging system.  *See* Dkt. No. 22 at 52.

Although Plaintiff's shift officially started at 6:30 a.m., Plaintiff's immediate supervisor, Timothy Budd,[2] allegedly instructed her in 2001 to check the call-in messaging service earlier so

---

[1] To avoid confusion, the Court's citations to specific page numbers reference the page numbers that the Court's electronic filing system automatically generates.

[2] Nick Della Pena was Plaintiff's first supervisor.  *See* Dkt. No. 29 at ¶ 4.  Mr. Budd replaced Mr. Della Pena as Plaintiff's immediate supervisor, serving in that role from June 2001 to April 2005.  *See* Dkt. No. 27 at ¶ 22.  Thereafter, Timothy Tetro was Plaintiff's immediate

(continued...)

that the production lines had enough workers to operate at 7:00 a.m.  *See* Dkt. No. 22 at 51-53;

Dkt. No. 27 at ¶ 14.  Thus, Plaintiff checked the call-in message system twice before she arrived

at work.  *See* Dkt. No. 22 at 52; Dkt. No. 29 at ¶ 6.  In addition, at Mr. Budd's request, Plaintiff

alleges that she worked late, i.e., after 3:00 p.m., and on weekends.  *See* Dkt. No. 22 at 27 at

¶ 20; Dkt. No. 29 at ¶ 13.

    In July 2008, after approximately thirteen years at Defendant Birds Eye, Plaintiff alleges

that she met with Defendant Earnie Pietrykowski, the Fulton Plant's Human Resources Manager,

to discuss the possibility of an early retirement.  *See* Dkt. No. 22 at 77-78; Dkt. No. 29 at ¶ 25.  In

October 2008, Plaintiff asserts that she informed her supervisors, Mr. Budd, Mr. Tetro, and Mr.

Dunn, that she was considering retirement.  *See* Dkt. No. 1 at ¶ 28; Dkt. No. 22 at 75-76; Dkt.

No. 29 at ¶¶ 25-26.


**B.    Defendant Birds Eye's timekeeping system**

    In 2004, Defendant Birds Eye implemented KRONOS® Timekeeping System, a web-

based timekeeping system, to manage its payroll operations.  *See* Dkt. No. 21-1 at ¶ 17; Dkt. No.

21-4 at ¶ 6.  KRONOS provided employees with web-based access to their timecards and

automatically pre-populated the timecards for salaried, non-exempt employees, such as Plaintiff,

with their individual core hours.  *See* Dkt. No. 21-1 at ¶¶ 18-19; Dkt. No. 21-4 at ¶ 10; Dkt. No.

27 at ¶¶ 18-19.  When necessary, employees would manually adjust their pre-populated core

---

[2](...continued)
supervisor from April 2005 until September 2006.  *See id.*  Mr. Budd resumed his role as
Plaintiff's immediate supervisor from September 2006 until his resignation in October 2008.  *See id.*

hours to reflect the hours they actually worked on any given day in the respective payroll period. *See* Dkt. No. 21-1 at ¶ 20; Dkt. No. 21-4 at ¶ 11. Per Defendant Birds Eye's alleged policy, employees submitted their timecards to their immediate supervisors for approval before they could be processed for payment.[3] *See* Dkt. No. 21-1 at ¶ 21. *But see* Dkt. No. 27 at ¶ 21. As Defendant Birds Eye paid its employees on a biweekly basis, supervisors approved timecards once every two weeks. *See* Dkt. No. 21-1 at ¶ 21.

Plaintiff's pre-populated core hours were 6:30 a.m. to 3:00 p.m., with a thirty-minute unpaid lunch. *See* Dkt. No. 27 at ¶¶ 14, 19. Mr. Budd served as Plaintiff's immediate supervisor from September 2006 until his resignation in October 2008; and, therefore, he approved her timecards during that time. *See* Dkt. No. 21-1 at ¶ 22; Dkt. No. 27 at ¶ 22. After Mr. Budd resigned, Defendant Pietrykowski assumed responsibility for approving Plaintiff's timecards. *See* Dkt. No. 21-1 at ¶ 23; Dkt. No. 21-3 at ¶ 20; Dkt. No. 27 at ¶¶ 22-23.

**C.    Defendant Pietrykowski's investigation of Plaintiff's timekeeping methods**

In the first payroll period following Mr. Budd's resignation, Defendant Pietrykowski allegedly discovered a discrepancy with the amount of time Plaintiff claimed to have worked from October 20, 2008, to November 14, 2008. *See* Dkt. No. 21-1 at ¶ 24; Dkt. No. 21-3 at ¶¶ 21-22. According to Defendant Pietrykowski, she generally arrived at work before 6:30 a.m. and could not recall seeing Plaintiff at her desk, which was stationed immediately outside her office. *See* Dkt. No. 21-1 at ¶¶ 25-26. Upon discovering this alleged discrepancy, Defendant

---

[3] According to Plaintiff, Defendant Birds Eye implemented a policy in 2004 requiring Mr. Budd and other supervisors to review their subordinates' timecards because employees at another plant were inflating their timecards with overtime hours. *See* Dkt. No. 22 at 69.

Pietrykowski contacted Susan Fuller, the Fulton Plant's administrative supervisor, explaining her concern about Plaintiff's timecards. *See id.* at ¶ 27. At Defendant Pietrykowski's request, Ms. Fuller retrieved the specific times at which Plaintiff had entered the Fulton Plant from October 20, 2008, through November 14, 2008, using Plaintiff's personal key fob ("key fob report").[4] *See id.* at ¶ 28. According to the key fob report, Plaintiff did not enter the Fulton Plant at or before 6:30 a.m. on any day in question. *See id.* at ¶ 29; Dkt. No. 23 at 76-84.

Due to this finding, Defendant Pietrykowski allegedly questioned the validity of Plaintiff's reported end time, namely 4:00 p.m. sharp, for each day during the relevant payroll period. *See* Dkt. No. 21-1 at ¶ 31; Dkt. No. 21-3 at ¶ 27. To verify whether Plaintiff had left the Fulton Plant at or near 4:00 p.m., Defendant Pietrykowski and Ms. Fuller reviewed time-stamped video footage of the Fulton Plant's main exit, which Plaintiff routinely used to leave work. *See* Dkt. No. 21-1 at ¶ 33; Dkt. No. 21-3 at ¶ 29. The video footage showed, for example, that Plaintiff left the Fulton Plan at 3:53 p.m. or earlier on nine occasions where her corresponding timecard indicated that she had left at 4:00 p.m. *See* Dkt. No. 23 at 88: Dkt. No. 21-3 at ¶¶ 30-31.

Defendant Pietrykowski presented the key fob report and video footage to Defendant Lois Warlick-Jarvie, the Senior Vice President of Human Resources, and Defendant Raymond Hauser, the Fulton Plant's Facility Manager. *See* Dkt. No. 21-1 at ¶ 36; Dkt. No. 21-3 at ¶ 32. In response, Defendant Jarvie allegedly directed the Department of Information Services to verify

---

[4] Defendant Birds Eye assigns all employees at the Fulton Plant a "key fob" that unlocks the plant's doors. *See* Dkt. No. 21-1 at n.13. Each key fob has a unique numerical identifier, and a computer software program tracks and catalogues the dates and times at which employees enter and leave the Fulton Plant. *See id.*

the times that Plaintiff had logged-on and logged-off her work computer ("computer log report"). *See* Dkt. No. 21-1 at ¶ 38. The computer log report indicated a discrepancy between Plaintiff's computer usage and the corresponding start and end times reflected on her timecards. *See id.* at ¶¶ 39-40.

### D.    Plaintiff's discharge

Based on the key fob report, video footage, and computer log report, Defendant Pietrykowski, Defendant Jarvie, and Defendant Hauser surmised that Plaintiff had falsely reported an extra seventeen hours and seventeen minutes of work hours from October 20, 2008, to November 14, 2008. *See* Dkt. No. 21-1 at ¶¶ 41-46; Dkt. No. 23 at 72-75. This alleged falsification resulted in Plaintiff collecting approximately $400.00 in unearned wages. *See* Dkt. No. 21-1 at ¶ 46; Dkt. No. 21-3 at ¶ 42. Defendant Pietrykowski, therefore, suspended Plaintiff on November 14, 2008, allegedly pending verification of the accuracy of the aforementioned evidence and an assessment of the full impact of Plaintiff's conduct. *See* Dkt. No. 21-1 at ¶ 43; Dkt. No. 21-3 at ¶ 39.

Defendant Pietrykowski reviewed the above-mentioned evidence and confirmed that Plaintiff allegedly had falsified her timecards in violation of Defendant Birds Eye's Code of Conduct and Code of Ethics, which sanction discipline, up to and including discharge, for violations thereof. *See* Dkt. No. 21-1 at ¶ 47; Dkt. No. 21-3 at ¶ 43. Accordingly, Defendant Pietrykowski fired Plaintiff, via telephone, on November 17, 2008. *See* Dkt. No. 21-1 at ¶ 48; Dkt. No. 21-3 at ¶¶ 44-45; Dkt. No. 22 at 71. That same day, Defendant Hauser sent Plaintiff a letter memorializing her discharge. *See* Dkt. No. 21-2 at ¶ 49; Dkt. No. 22 at 72.

**E.      Plaintiff's administrative complaint and the present lawsuit**

On April 23, 2009, Plaintiff filed a verified complaint against Defendant Birds Eye with

the New York State Division of Human Rights ("NYSDHR"), alleging unlawful age

discrimination.  *See* Dkt. No. 21-1 at ¶ 1; Dkt. No. 22 at 6-9.  Plaintiff's NYSDHR complaint was

simultaneously cross-filed with the United States Equal Employment Opportunity Commission

("EEOC").  *See* Dkt. No. 21-1 at ¶¶ 2-3; Dkt. No. 27 at ¶¶ 2-3.  On October 27, 2009, the

NYSDHR issued its Final Investigation Report and Basis of Determination, finding "no probable

cause to support the allegations of the complaint."  *See* Dkt. No. 22 at 10-15.  On October 1,

2010, the EEOC adopted the NYSDHR's findings and issued Plaintiff a Right to Sue Notice.  *See*

*id.* at 17.

On December 30, 2010, Plaintiff filed the instant action against Defendants, alleging (1)

age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) age

discrimination in violation of New York State Human Rights Law ("NYSHRL"); (3) *prima facie*

tort; and (4) bad faith/wrongful discharge.  *See* Dkt. No. 1.  On September 24, 2012, Defendants

filed the pending motion for summary judgment, *see* Dkt. Nos. 21-25, to which Plaintiff filed

papers in opposition, *see* Dkt. Nos. 27-37.


**III. DISCUSSION**

**A.      Standard of review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the movant

satisfies its burden, the non-moving party must set forth "'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation and footnote omitted).

In determining whether a genuine issue of material fact exists, "the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor." *Consol. Risk Servs. Inc. v . Auto. Dealers WC Self Ins. Trust*, No. 1:06-CV-871, 2010 U.S. Dist. LEXIS 68401, *10 (N.D.N.Y. July 9, 2010) (citation omitted). As in any other case, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must 'do more than simply show that there is some metaphysical doubt as to the material facts' . . . . She must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)) (other citations omitted); *see also Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (explaining that "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact" (citation omitted)). Thus, in the context of employment discrimination actions, an employer is entitled to summary judgment if (1) "the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred"; or (2) "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision[.]" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000) (citations omitted).

With these principles in mind, the Court will address each of Plaintiff's claims.

**B.**    **Plaintiff's bad faith/wrongful termination and *prima facie* tort causes of action**

To recover under the doctrine of *prima facie* tort, a plaintiff must show "the 'infliction of intentional harm, resulting in [special] damage[s], without excuse or justification, by an act or series of acts which would otherwise be lawful.'"  *Evans v. Excellus Health Plan, Inc.*, No. 6:11-CV-1248, 2012 U.S. Dist. LEXIS 109849, *17 (N.D.N.Y. Aug. 6, 2012) (quotation omitted). "There is no recovery under a *prima facie* tort theory if there are other motives behind a defendant's actions, 'such as profit, self-interest, or business advantage,' . . ., or if there is no evidence of 'personal animosity, hostility or malice between plaintiff and his supervisors.'"  *Id.* at *21 (quotations and footnote omitted).  Stated differently, "[t]he sole motivation for the damaging acts must have been a malicious intention to injure the plaintiff."  *Marcella v. ARP Films, Inc.*, 778 F.2d 112, 119 (2d Cir. 1985); *see also Backus v. Planned Parenthood of Finger Lakes, Inc.*, 161 A.D.2d 1116, 1117 (4th Dep't 1990) (stating that "[t]here can be no recovery [for a *prima facie* tort] unless a '"disinterested malevolence"' to injure plaintiff constitutes the sole motivation for defendants' otherwise lawful act" (quotation omitted)).

Moreover, New York law does not recognize a cause of action for wrongful discharge of an at-will employee; and an at-will employee may not evade this well-settled rule by asserting a cause of action for *prima facie* tort.  *See Evans*, 2012 U.S. Dist. LEXIS 109849, at *17 (stating that "[a]n at-will employee cannot use a *prima facie* tort claim as a 'bootstrap' to circumvent the lack of a tort claim for wrongful discharge . . . merely by alleging that the termination was motivated solely by a desire to harm the plaintiff" (citing [*Murphy v. Amer. Home Prods. Corp.*, 58 N.Y.2d 293,] 303-04 [(1983)])).

At the outset, the Court finds that, as a matter of law, Plaintiff's undisputed status as a

former at-will employee is fatal to her bad faith/wrongful discharge cause of action.  Therefore, the Court grants Defendants' motion for summary judgment with respect to that claim.

Furthermore, the Court rejects Plaintiff's attempt to evade the unavailability of a wrongful discharge claim by alleging a *prima facie* tort.  Even construing the facts most favorably to Plaintiff, she has not raised a triable issue of fact that Defendants' sole motivation for discharging her was "'disinterested malevolence.'"  *Backus*, 161 A.D.2d at 1117 (quotation omitted).  Beyond summarily labeling Defendants' conduct as malicious or wanton, Plaintiff has not adduced any evidence from which a reasonable jury could infer that Defendants' desire to harm Plaintiff solely motivated their decision to terminate her employment.  *See Evans*, 2012 U.S. Dist. LEXIS 109849, at *17.

In addition, the Court finds that Plaintiff has not alleged, let alone proven, the requisite special damages required of a *prima facie* tort claim.  *See O'Keefe v. Niagara Mohawk Power Corp.*, 714 F. Supp. 622, 634 (N.D.N.Y. 1989) (granting the defendants' motion for summary judgment with respect to the plaintiff's *prima facie* tort claim, in part, because he failed to plead the special damages with the requisite specificity); *Wehringer v. Helmsley-Spear, Inc.*, 91 A.D.2d 585, 586 (1st Dep't 1982) (explaining that "[o]ne of the essential elements of the [*prima facie* tort] cause of action is an allegation that plaintiff suffered specific and measureable loss").  In a most general fashion, Plaintiff's complaint alleges that, "[a]s a result of Defendants' tortous acts against her, Plaintiff has suffered actual and special damages including monetary damages, lost wages and benefits, emotional and psychological damages, embarrassment, humiliation, emotional distress and mental anguish and suffering."  *See* Dkt. No. 1 at ¶ 59; *see also Evans*, 2012 U.S. Dist. LEXIS 109849, at *25 (dismissing the plaintiff's *prima facie* tort claim, in part,

because she "merely state[d] that she ha[d] sustained special damages 'in a sum not less than the total wages and benefits that would have been earned from continued employment with [the defendant]'" (quotation omitted)); *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 372 (W.D.N.Y. 2010) (dismissing the plaintiff's *prima facie* tort claim because she merely pled that her special damages included "'severe pain and mental anguish,' injury to her reputation, loss of unspecified wages from taking unpaid leave, loss of unspecified fringe benefits, and unspecified costs associated with 'medical or therapeutic care'").

Accordingly, for all these reasons, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's *prima facie* tort and bad faith/wrongful discharge causes of action.[5]

## C.    Plaintiff's state-law discrimination claim

Under New York Executive Law § 297(9), "a litigant who files a claim with the NYSDHR cannot bring the same claim in federal court . . . ." *Waller v. Muchnick, Golieb & Golieb, P.C.*, No. 12-922-cv, 2013 U.S. App. LEXIS 13356, *2 n.1 (2d Cir. June 27, 2013) (citations omitted); *see also Moodie v. Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 884 (2d Cir. 1995) (confirming that, "'[o]nce a complainant elects the administrative forum by filing a complaint with the [NYSDHR], that becomes the sole avenue of relief, and subsequent judicial action on the same complaint is generally barred'" (quotation and other citation omitted)). In such a case, "'the [c]ourt lacks subject matter jurisdiction to consider [a] NYSHRL claim[] based

---

[5] Since the Court has granted Defendants' motion for summary judgment with respect to the merits of these claims, the Court does not need to address Defendants' statute-of-limitations argument.

on the same acts raised with the [NYSDHR]." *Brown v. Research Found. of SUNY*, No. 08-CV-592, 2009 U.S. Dist. LEXIS 45971, *33 (N.D.N.Y. May 28, 2009) (citation omitted)). The election of remedies provision, however, does not apply where the NYSDHR dismisses the plaintiff's complaint because of administrative convenience, untimeliness, or annulment of the election of remedies. *See Thorpe v. Piedmont Airlines, Inc.*, No. 3:12-CV-0063, 2013 U.S. Dist. LEXIS 24386, *16 (N.D.N.Y. Feb. 22, 2013) (citing N.Y. Exec. L. § 297(9)).

In this case, Plaintiff elected to file a verified complaint against Defendant Birds Eye with the NYSDHR, alleging unlawful age discrimination. *See* Dkt. No. 22 at 7-9. The NYSDHR dismissed her complaint for lack of probable cause, not for administrative convenience, untimeliness, or annulment of the election of remedies. *See id.* at 11-15. Therefore, the Court finds that § 297(9)'s election of remedies provision bars Plaintiff from asserting the same age discrimination claim in this Court that she raised before the NYSDHR. *See Desardouin v. City of Rochester*, 708 F.3d 102, 106 (2d Cir. 2013) (holding that "[t]he District Court properly ruled that [the plaintiff's] NYSHRL claim was barred on the basis of election of remedies"); *Thorpe*, 2013 U.S. Dist. LEXIS 24386, at *15-*16 (stating that, "when a plaintiff chooses to file a complaint with the NYSDHR, such filing constitutes an election to proceed in an administrative forum and such election bars a subsequent judicial course of action on the same facts" (citations omitted)). Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's NYSHRL discrimination claim.

-12-

**D.    Plaintiff's ADEA discrimination claim**

   *1. ADEA discrimination claim against the individual Defendants*

   The ADEA does not provide a "basis for imposing individual liability on agents of an employer[.]"  *Thorpe*, 2013 U.S. Dist. LEXIS 24386, at *19 (citing *Walsh v. City of Auburn*, 942 F. Supp. 788, 797 (N.D.N.Y. 1996)).  Therefore, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's ADEA claim insofar as she asserts that claim against Defendants Pietrykowski, Hauser and Jarvie.

   *2. Plaintiff's ADEA claim against Defendant Birds Eye*

   Under the ADEA, it is "unlawful for an employer . . . to . . . discharge any individual or otherwise discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's age[.]"  29 U.S.C. § 623(a)(1).  The ADEA protects individuals aged forty and older.  *See* 29 U.S.C. § 631(a).

   Courts analyze ADEA claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010).  Per this framework, the plaintiff must first demonstrate, by a preponderance of the evidence, a *prima facie* case of discrimination.  *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  To satisfy this burden, a plaintiff must show that (1) she was within the protected age group; (2) she was qualified for the position held; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *See Gorzynski*, 596 F.3d at 107 (citation omitted).  If the plaintiff is successful, "the defendant may rebut that showing by

articulating a legitimate, non-discriminatory reason for the employment action." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citations omitted); *see also Toomer v. Dep't of Educ. of City of N.Y.*, No. 09 Civ. 9034, 2013 U.S. Dist. LEXIS 44952, *17 (S.D.N.Y. Mar. 28, 2013) (explaining that "[a]n employer's burden for a non-discriminatory explanation 'is simply one of articulation or production,' not of 'proving the absence of a discriminatory motive'" (quotation omitted)).  If the defendant articulates such a reason, the burden returns to the plaintiff to present "evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." *Weinstock*, 224 F.3d at 42.

In this case, Defendant Birds Eye concedes that Plaintiff has satisfied the minimal requirements of a *prima facie* case of age discrimination.  *See* Dkt. No. 21-2 at 15.  Likewise, Plaintiff concedes that Defendant Birds Eye has articulated a legitimate, non-discriminatory reason for discharging her, i.e., the alleged falsification of her payroll timecards.  *See* Dkt. No. 28 at 18.  The parties, however, disagree about whether Defendants' stated reason for discharging her is a pretext for discrimination.

To demonstrate pretext, the plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and not just a motivating factor.  *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).  Where a plaintiff cannot satisfy the "but-for" causation standard, this Court has consistently dismissed ADEA age discrimination claims at the summary judgment stage.  *See, e.g., Schumacher v. Granite Servs., Inc.*, No. 1:08-CV-01038, 2012 U.S. Dist. LEXIS 37458, *24-*29 (N.D.N.Y. Mar. 20, 2012); *Zuk v. Onondaga Cnty.*, No. 5:09-CV-0272, 2011 U.S. Dist. LEXIS 104037, *29-*34 (N.D.N.Y. Sept. 14, 2011); *Riordan v. BJ's Wholesale Club, Inc.*, No. 1:08-CV-1229,

2011 U.S. Dist. LEXIS 3906, *26 (N.D.N.Y. Jan. 14, 2011).

Plaintiff raises several arguments in support of her claim that Defendant Birds Eye's reason for terminating her employment was a pretext for discrimination: (1) Defendant Birds Eye's and Defendant Pietrykowski's prior knowledge of Plaintiff's timekeeping methods; (2) Defendant Pietrykowski's deviation from her standard investigatory procedures and the Code of Conduct; and (3) Defendant Birds Eye's desire to evade paying Plaintiff retirement benefits. *See* Dkt. No. 28 at 19-24.

As noted, Plaintiff concedes that Defendants have met their burden to articulate a reason for firing Plaintiff, i.e., their belief that Plaintiff falsified her timecards. Furthermore, based on the evidence in the record, the Court finds that Defendants have proffered sufficient evidence to demonstrate that their belief was reasonable. *See Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir. 1998) (stating that "the ADEA does not make employers liable for doing stupid or even wicked things; it makes them liable for *discriminating*, for firing people on account of their age"). First, Defendant Birds Eye and Defendant Pietrykowski deny prior knowledge of Plaintiff's timekeeping practices, asserting that Defendant Pietrykowski did not have access to Plaintiff's electronic timecards after Defendant Birds Eye installed KRONOS in November 2004. *See* Dkt. No. 21-1 at ¶ 74. Defendants have also submitted a "Timecard Signoff, Request and Approval Audit Trail," which details the dates, times, and names of individuals who approved Plaintiff's timecards from December 2004, to November 2008, to demonstrate that Defendant Pietrykowski first approved Plaintiff's timecards on October 19, 2008. *See id.* at ¶ 75. Plaintiff has not come forward with evidence to counter Defendants' argument that they did not have prior knowledge of Plaintiffs' timekeeping practices.

-15-

Furthermore, even if Defendants Birds Eye and Pietrykowski did have prior knowledge of Plaintiff's timekeeping methods, the Court declines to "sit as a super-personnel department" and second-guess Defendant Birds Eye's decision to discharge Plaintiff based on its reasonable belief that Plaintiff had falsified her timecards. *See Ascione v. Pfizer, Inc.*, 312 F. Supp. 2d 572, 578 (S.D.N.Y. 2004) (finding that "[i]t would be improper for the Court to second-guess [Defendant's] investigation, or make an independent determination as to whether or not [Plaintiff] intentionally falsified her time sheets" (citation omitted)); *cf. Hasemann v. United Parcel Serv. of Am., Inc.*, No. 3:11-cv-554, 2013 U.S. Dist. LEXIS 25704, *28 (D. Conn. Feb. 26, 2013) (stating that "[i]t is axiomatic that an 'employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason'" (quotation and other citation omitted)).

Moreover, the Court finds that Plaintiff has not demonstrated that Defendants Birds Eye and Pietrykowski concealed any such prior knowledge they might have had to mask discriminatory animus. *See Davis v. Peake*, No. 08 CIV. 3570, 2011 U.S. Dist. LEXIS 107380, *23-*24 (S.D.N.Y. Sept. 20, 2011) (finding that, "[w]hile [the p]laintiff seem[ed] to argue that [d]efendant's alleged departure from procedures is indicative of pretext, [the] plaintiff . . . still [needed to] produce evidence that the defendant's reason 'even if pretextual' was a pretext for discrimination" (citation omitted)). Stated differently, the Court finds that Plaintiff has failed to demonstrate, beyond her speculative and unsupported contentions, that Defendant Birds Eye's stated reason for firing her was pretext, let alone pretext for unlawful age discrimination.

Second, although Plaintiff argues that Defendant Pietrykowski departed from her usual procedures in investigating her timecards, the Court finds that a reasonable jury could not reach

-16-

that conclusion based on the undisputed evidence. *See id.* at *21 (explaining that "[e]vidence of an employer's failure to carry out its policies and procedures '[s]tanding alone,' . . . 'does not provide sufficient evidence for a trier of fact to infer' Plaintiff was not hired due to discriminatory reasons" (quotation omitted)).  The record demonstrates that Defendant Pietrykowski did not hastily discharge Plaintiff after she discovered discrepancies in Plaintiff's timecards, but rather launched an inclusive investigation, which included enlisting the assistance of Ms. Fuller, Defendant Hauser, and Defendant Jarvie and collecting objective electronic evidence, i.e., the key fob report, the time stamped video footage, and the computer log report. *See Jordan v. Olsten Corp.*, 111 F. Supp. 2d 227, 236 (W.D.N.Y. 2000) (finding that "Title VII d[id] not protect [the plaintiff] if, as she allege[d], [the defendant] conducted a shoddy investigation into the allegations and subsequently made a poorly informed decision to fire her.  That is, it is irrelevant whether [the defendant] did a sub-standard job of investigating and reaching a decision.").

Additionally, with respect to the Code of Conduct, the Court finds that Plaintiff has not identified any employees who falsified their timecards and were treated differently.  *See Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 112 (S.D.N.Y. 2009) (stating that, "in the absence of evidence that Defendants acted in bad faith, failed to follow their ordinary disciplinary procedures or treated other employees differently    proof that is completely lacking here    complaints about the adequacy of HVHC's investigation, even if accepted as true, cannot show pretext or defeat a summary judgment motion" (citation omitted)).

Furthermore, the Court finds that Plaintiff has offered insufficient evidence to show that Defendant Birds Eye intentionally discharged her to evade paying her retirement benefits, retiree

health insurance benefits, and the like.  In fact, the record overwhelmingly demonstrates the implausibility of Plaintiff's argument because Defendant Birds Eye (1) had frozen her retirement pension benefits since September 2006; (2) only ceased contributing to her 401(k) and Social Security accounts after her discharge; and (3) did not offer retiree health insurance benefits to salaried employees like Plaintiff.  *See* Dkt. No. 21-1 at ¶¶ 83-88, 91-92; Dkt. No. 27 at ¶¶ 83-92.

Finally, the Court notes that Defendants have submitted evidence that further dispels Plaintiff's pretext argument, including the facts that (1) eighteen out of twenty-two employees whom Defendant Birds Eye discharged in 2008 were younger than Plaintiff and (2) fifty percent of Defendant Birds Eye's workforce in 2009 were older than fifty.  *See* Dkt. No. 21-1 at ¶¶ 103-104; Dkt. No. 27 at ¶¶ 103-104.  Also, at the time of Plaintiff's discharge, Defendant Pietrykowski was fifty years old; Defendant Jarvie was fifty years old; and Defendant Hauser was fifty-four years old.  *See* Dkt. No. 21-1 at ¶¶ 105-106; Dkt. No. 27 at ¶¶ 105-106.  The fact that Plaintiff and Defendants Pietrykowski, Jarvie and Hauser were so close in age significantly undercuts any suggestion of pretext.  *See Drummond v. IPC Int'l, Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005) (stating that it is the "well-recognized inference against discrimination . . . where the person who participated in the allegedly adverse decision is also a member of the same protected class" (citation omitted)); *Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 225 (E.D.N.Y. 1993) (dismissing age discrimination claims where the employees responsible for the plaintiff's discharge were approximately the same age as or older than the plaintiff).

Moreover, the record includes an email exchange between two of Defendant Birds Eye's managers that further negates any suggestion of but-for causation.  *See* Dkt. No. 32 at 1-8. Specifically, Defendant Jarvie wrote an email to Daryl Pike, Senior Vice President of Operations,

dated November 19, 2008, explaining that Plaintiff had been falsifying her timecards and "that [she] was creating a negative environment at Fulton, that [Plaintiff] talked openly and frequently about looking for other work and told people she would leave as soon as she could." *See id.* at 4. In that same email, Defendant Jervie wrote the following:

> [t]o your question about changing the action with [Plaintiff], I suggest we see where we are after your further inquiries.  We can certainly tell [Plaintiff] we are reinstating her with back pay because further information came to light after Fulton's investigation was concluded . . . Hell, Daryl, if this happens, I'll personally apologize to her . . . .

*See id.* at 5.

In addition, the Court finds that the fact that Plaintiff has not alleged "a single age discriminatory comment or incident in [her thirteen year tenure at Defendant Birds Eye] also weakens h[er] claim that age was the 'but for' factor in h[er] termination." *Gannon v. United Parcel Serv.*, No. 12-3556-cv, 2013 WL 3603432, *2 (2d Cir. July 16, 2013) (citing *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000) (stating one factor in favor of summary judgment was that the "plaintiff ha[d] failed to offer any evidence that he was subjected to any age-related comments or criticisms on the job")).  At most, Plaintiff testified that other employees had made stray ageist remarks toward her such as "'Happy birthday, you old fart[]'"; "[w]hen are you thinking about retiring?'"; and "'[h]ow much longer are you going to stay here?'"".  *See* Dkt. No. 22 at 86-87; *see also James v. New York Racing Ass'n*, 233 F.3d 149, 153 (2d Cir. 2000) (affirming summary judgment for defendant because, "while [the plaintiff] cited jokes referring to aging, none of them ridiculed or disparaged aging or in any way showed discriminatory animus against older workers"); *Kittrell v. City of N.Y.*, No. 10-CV-2606, 2013 U.S. Dist. LEXIS

77101, *48-*49 (E.D.N.Y. Mar. 14, 2013) (finding that a birthday card from the plaintiff's supervisor, which "picture[d] a judge and the message 'You're old! Case closed,'" to be a "'stray remark'" and did not support "plaintiff's claim that she was terminated on account of her age" (citations omitted)); *Ko Sheng Chuang v. T.W. Wang Inc.*, 647 F. Supp. 2d 221, 229-31 (E.D.N.Y. 2009) (finding that proof of innocuous workplace banter, even if age-related, did not support claim of discriminatory discharge, in part, because "no reasonable trier of fact could determine that there was a connection between the comments and [plaintiff's] termination"). Therefore, the Court finds that the comments to which Plaintiff refers lack any probative value to support Plaintiff's claim that her age was the but-for cause of her discharge. *See Weiss v. Morgan Stanley Inv. Mgmt.*, No. 05 CV 3310, 2008 U.S. Dist. LEXIS 24400, *13 (S.D.N.Y. Mar. 27, 2008) (explaining that, at the summary judgment stage, "[i]t is not enough for a plaintiff to merely allege discrimination[;] . . . [rather] she must provide the [c]ourt with evidence of such discrimination").

Based on all of the evidence in the record, the Court concludes that, not only has Plaintiff provided insufficient evidence from which a reasonable jury could conclude that Defendant Birds Eye's articulated reason for firing Plaintiff was pretextual, she has also failed to produce sufficient evidence from which a reasonable jury could find that Plaintiff's age was even a motivating factor, let alone the but-for reason, for Defendant Birds Eye's decision to fire her.

Accordingly, for all of the above-stated reasons, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's ADEA claim.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case.

**IT IS SO ORDERED.**

Dated: September 23, 2013
        Syracuse, New York


_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge